IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00863-PAB-CBS

ALLSTATE INSURANCE COMPANY,

    Plaintiff,

v.

ALFRED VON METZGER,
CATHERINE VON METZGER.
CRAIG EARHART,
HOLLY EARHART,
DAVID LATHAM,
ANNE LATHAM,
GEOFF BIDDULPH,
TAPANI LAINE,
PAULA LAINE,
DAVID FRASER, and
JANET FRASER,

    Defendants.

**ORDER GRANTING SUMMARY JUDGMENT**

This matter is before the Court on plaintiff's motion for summary judgment [Docket No. 35]. The motion is fully briefed and ripe for disposition. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity.

**I. BACKGROUND**[1]

This is a declaratory judgment action pursuant to 28 U.S.C. § 2201 in which plaintiff seeks a declaration stating that it has no obligation to defend defendants Alfred and Catherine von Metzger in a state court civil case under an insurance policy. The

---

[1] Unless otherwise indicated, the following facts are not in dispute.

von Metzgers are insured by plaintiff under a personal umbrella insurance policy, number 907797694, which contains several exclusions. The first is a "business exclusion" which provides that:

>   This policy will not apply:
>   1. to any act, or failure to act, of any person in performing functions of that person's business.
>   2. to any occurrence arising out of a business or business property.

Docket No. 35-1 at 11. The policy further defines "business" as "any full or part-time activity of any kind engaged in for economic gain. It does not include: a) farming; or b) the rental or holding for rental of any premises in a one, two, three, or four family residence owned or controlled by an insured as a dwelling, office, school or studio." Docket No. 35-1 at 7. It also defines "business property" as "any property on which a business is conducted" and "includes any part of the premises rented, leased or held for those purposes" but excludes "a one, two, three or four family residence premises an insured owns, controls, rents or holds for rental as a dwelling, office, school or studio," "a farm," or "the part of any building in which an insured resides." Docket No. 35-1 at 7.

The policy also contains a "pollution exclusion" which states that the policy does not apply:

>   11. to property damage consisting of, or caused by, any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
>       a) lead in any form;
>       b) asbestos in any form;
>       c) radon in any form; or
>       d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank.
>   This exclusion does not apply to property damage which results from heat, smoke or fumes from a hostile fire.

Docket No. 35-1 at 16.

On November 6, 2009, defendants Craig Earhart, Holly Earhart, David Latham, Anne Latham, Geoff Biddulph, Tapani Laine, Paula Laine, David Fraser, and Janet Fraser (collectively "the state court plaintiffs") filed a civil complaint against the von Metzgers in Larimer County District Court.  The complaint alleges that the von Metzgers developed the Goose Hollow Estates subdivision and sold lots to the state court plaintiffs without disclosing that the land was contaminated by "waste oil and other unknown toxins."  Docket No. 35-2.  According to the complaint, the von Metzgers knew that illegal dumping occurred on the property when it was used for oil and gas exploration and as a commercial greenhouse but concealed this knowledge.  The von Metzgers then sold lots in the subdivision to the plaintiffs without disclosing that they still contained contaminated soil, allegedly causing plaintiffs property damage.  The state court complaint alleges that the von Metzgers engaged in deceptive trade practices and fraud in developing and marketing the subdivision and that they were negligent, committed civil conspiracy, and created a nuisance by failing to disclose the contamination.

## II.  STANDARD OF REVIEW

"In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims, but [federal courts] are governed by federal law in determining the propriety of . . . summary judgment."  *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007) (internal quotations omitted).  According to Federal Rule of Civil Procedure 56, a court should grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986). A movant who bears the burden at trial must submit evidence to establish every essential element of its claim. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(c).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

### III.  DISCUSSION

The parties agree that Colorado law governs the substance of plaintiff's claim. Plaintiff argues that either the business or pollution exclusions in the policy apply to defeat its obligation to defend or indemnify the von Metzgers in the Larimer County suit. The Court will discuss the general principles governing interpretation of insurance policy exclusions under Colorado law and then address each arguably applicable exclusion.

### A. Insurance Policy Exclusions under Colorado Law

When construing the terms of an insurance policy, Colorado courts apply traditional principles of contract interpretation. *Cotter Corp. v. Amer. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo. 2004). "A trial court may not look beyond the plain words of an insurance contract to interpret it based on the contracting parties' underlying intent unless the contract terms are ambiguous or are used in a special or technical sense not defined in the contract." *TerraMatrix, Inc. v. United States Fire Ins. Co.*, 939 P.2d 483, 486 (Colo. App. 1997). Whether the contract is ambiguous is a question of law. *Id.*

When considering the application of a policy exclusion, courts must be mindful that insurance companies have a broad duty to defend their insureds and bear a heavy burden when seeking to avoid this duty. *Id.* To defeat a duty to defend, the insurer must establish that "the allegations in the complaint are solely and entirely within the exclusions of the insurance policy." *Compass Ins. Co v. City of Littleton*, 984 P.2d 606, 618 (Colo. 1999) (quoting *Hecla Min. Co. v. New Hampshire Ins., Co.*, 811 P.2d 1083, 1089 (Colo. 1991)). To avoid coverage based on a policy exclusion, the insurer must show that the exclusion applies and "is subject to no other reasonable interpretations." *TerraMatrix*, 939 P.2d 483, 486.

### B. Business Exclusion

Plaintiff claims that the business exclusion provided in the policy applies to the allegations of the state complaint. This provision excludes coverage based on "any act, or failure to act, of any person in performing functions of that person's business" or "to

any occurrence arising out of a business or business property." Docket No. 35-1 at 11. The policy further defines "business" as "any full or part-time activity of any kind engaged in for economic gain" and "business property" as "any property on which a business is conducted." Docket No. 35-1 at 7. Plaintiff contends that this language unambiguously covers the von Metzgers' development and sale of lots at the Goose Hollow Estates. The von Metzgers respond that a genuine issue of fact remains as to whether the development of the property was a business because each of them had other occupations and neither was a professional developer.

Colorado cases instruct courts to give the words of insurance contracts "their plain meaning according to common usage" and avoid "strained constructions." *Bolejack v. Travelers Ins. Co.*, 64 P.3d 939, 940 (Colo. App. 2003). The complaint alleges that the von Metzgers committed various torts in the course of subdividing the Goose Hollow Estates for residential development and selling lots to the state court plaintiffs. These activities unambiguously fall under the plain meaning of the terms in the policy's business exclusion. That the von Metzgers did not engage in the development of the Goose Hollow Estates full time is immaterial because the policy's definition of "business" includes "part-time activity." Nor is it material whether the von Metzgers had any qualifications or experience as residential developers, established a business entity to develop the property, or had a business plan. The von Metzgers point to nothing in the policy language that makes an exception for an inexperienced business activity. It is clear that the von Metzgers subdivided the property and sold its lots for economic gain. There is no reasonable interpretation of the exclusion that does not cover the conduct alleged in the state complaint.

The von Metzgers point to cases from other states interpreting policy provisions excluding coverage for "business pursuits." These cases require that to be a "business pursuit" an activity must be (a) continuous and (b) have a profit motive. *See, e.g.*, *AMCO Ins. Co. v. Beck*, 929 P.2d 162 (Kan. 1996). The cases from outside Colorado are not persuasive. First, the von Metzgers present no authority suggesting that Colorado courts apply a similar test. Second, the policy here does not include a traditional "business pursuits" exclusion. For instance, in *AMCO Ins.*, the policy defined "business" as including a "trade, profession, or occupation." *Id.* at 269. The policy here does not mention "business pursuits" or "trade, profession, or occupation," but broadly excludes "any full or part-time activity of any kind engaged in for economic gain." *See* Docket No. 35-1 at 7. Nevertheless, even applying the two-part test urged by the von Metzgers, Docket No. 40 at 15-16, the von Metzgers' development of the property was a business pursuit. First, the von Metzgers' subdivision and sale of lots in the Goose Hollow Estates was a continuous activity which persisted over several years. *See* Docket No. 35-2 at 7, 10 (alleging that the von Metzgers sold Lot 4 to Craig and Holly Earhart on May 23, 1996 and sold Lot 1 to Tracy Ragsdale and Alan Carpenter on October 17, 2005). Second, even if the von Metzgers had other sources of income, they clearly developed their property and sold the lots with a profit motive. *See* Docket No. 35-2 at 12 (alleging that the Von Metzgers gave false information to plaintiffs in the context of a transaction in which they had a financial interest). Therefore, the business exclusion in the policy applies to the allegations in the state court complaint and plaintiff

has no duty to defend or indemnify the von Metzgers under the policy in the state action.

### C. Pollution Exclusion

Plaintiff also argues that the policy's pollution exclusion bars its duty to defend. The Court agrees. The policy states that it does not apply

> to property damage consisting of, or caused by, any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
> a) lead in any form;
> b) asbestos in any form;
> c) radon in any form; or
> d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank.

Docket No. 35-1 at 16. This exclusion is an absolute pollution exclusion. In Colorado, a pollution exclusion is not absolute where it contains an exception for "'sudden and accidental' releases of pollutants." *See TerraMatrix*, 939 P.2d at 487. The pollution exclusion here does not contain an exception for accidental release or any other similar qualification. Colorado courts addressing absolute pollution exclusions determine whether the exclusion is ambiguous by examining how it would apply to the facts and circumstances of the particular case. *See id.*; *Roinestad v. Kirkpatrick*, 2010 WL 4008895 at *5 (Colo. App. Oct. 14, 2010).

On the facts alleged in the state court complaint, the pollution exception unambiguously applies. The state court complaint alleges that the von Metzgers failed to disclose that illegally dumped oil and other toxins had contaminated the soil in their subdivision and that, as a result, the state court plaintiffs' property was damaged. This sort of environmental claim is precisely the type of claim to which pollution exclusions

are intended to apply. The policy unambiguously alerted the von Metzgers to the fact that property damage from traditional environmental contamination would not be covered. *Compare Roinestad*, 2010 WL 4008895 at *6 (pollution exclusion did not "clearly and specifically alert" the insured that coverage would be excluded for an injury resulting from "a sewer that is clogged by negligently dumped cooking oil and grease").

The von Metzgers argue that the policy's pollution exclusion can reasonably be read not to apply because the oil contamination referred to in the state complaint is not alleged to be from a storage tank. The von Metzgers argue that, whereas the pollution exclusion broadly states that the policy does not cover lead, asbestos or radon "in any form," the policy language regarding petroleum contamination is more narrow in that such contaminants must be associated with storage tanks: "oil, fuel oil, kerosene, liquid propane or gasoline *intended for, or from a storage tank*." Docket No. 35-1 at 16 (emphasis added). However, this argument misses the key phrase preceding this list of substances: "including, but not limited to." As plaintiff points out, this phrase unambiguously indicates that what follows is a nonexhaustive list of examples of pollutants, which list does not narrow the preceding language excluding property damage caused by "any type of . . . toxic liquids." *See United States v. Water Supply & Storage Co.*, 546 F. Supp. 2d 1148, 1152-53 (D. Colo. 2008) (explaining the ordinary meaning of "including, but not limited to"). Therefore, the pollution clause unambiguously excludes coverage for claims in the state court complaint based on property damage from illegally dumped oil.

The pollution exclusion also excludes coverage for claims in the state court complaint based on "unknown toxins." The von Metzgers do not dispute the fact that

9

the state court complaint alleges the soil was contaminated with unknown toxins other than oil and that these toxins unambiguously fall under the exclusion for property damage caused by "toxic chemicals, toxic gasses, toxic liquids, [or] toxic solids." Therefore, the pollution exclusion operates to exclude coverage for all of the allegations regarding contamination in the state court complaint and the policy's pollution exclusion additionally exempts plaintiff from defending the von Metzgers in the state case.

### D.  Request for Additional Discovery

Finally, the von Metzgers argue that summary judgment should not be granted without their having an opportunity to conduct additional discovery pursuant to Fed. R. Civ. P. 56(f), recently renumbered as 56(d).  The von Metzgers seek discovery regarding two issues.  First, Catherine von Metzger believes that she and her husband were insured by plaintiff in policies other than the umbrella policy at issue here, but that she no longer possesses these policies.  Second, Catherine von Metzger also believes that plaintiff defended and settled a similar state lawsuit against the von Metzgers under the umbrella policy at issue here.

The von Metzgers have failed to demonstrate why either of these issues is material to this declaratory judgment action.  That the von Metzgers may have other policies with plaintiff does not affect the rights and obligations under the umbrella policy at issue in this action.  Moreover, that plaintiff defended the von Metzgers in a similar lawsuit does not affect the Court's analysis that, under the terms of the policy exclusions, plaintiff is not obligated to defend the von Metzgers in the state lawsuit at issue here.

## IV.  CONCLUSION

For the foregoing reasons it is,

**ORDERED** that plaintiff's Motion for Summary Judgment [Docket No. 35] is **GRANTED**.  It is further

**ORDERED** that declaratory judgment shall enter for plaintiff and against defendants pursuant to 28 U.S.C. § 2201 as follows:

> Allstate Insurance Company has no obligation under Personal Umbrella Policy number 907797694, issued to Alfred von Metzger and Catherine von Metzger, to defend or indemnify from or against any claims for liability or damages in the civil action against Alfred von Metzger and Catherine von Metzger filed November 6, 2009 in Larimer County District Court, Case No. 2009CV1142 by Craig Earhart, Holly Earhart, David Latham, Anne Latham, Geoff Biddulph, Tapani Laine, Paula Laine, David Fraser, and Janet Fraser.

DATED February 28, 2011.

                                              BY THE COURT:

                                              s/Philip A. Brimmer
                                              PHILIP A. BRIMMER
                                              United States District Judge